IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CALEB KANATZAR,

    Plaintiff,

  vs.          Case No. 17-3115-SAC

BRIAN COLE, TIMOTHY PHELPS,
CAPTAIN RUCKER, and
MARY FLETCHER,

    Defendants.

MEMORANDUM AND ORDER

    The plaintiff Caleb Kanatzar, a pretrial detainee at the Shawnee County Department of Corrections ("SCDC"), in Topeka, Kansas, has submitted a 29-page complaint for relief alleging 10 claims under 42 U.S.C. § 1983, and naming as defendants, Brian Cole, as director of SCDC; Timothy Phelps, an SCDC officer; Captain Rucker, an SCDC officer; and Mary Fletcher, a food services supervisor at SCDC. ECF# 1. The plaintiff's claims read like a summary of isolated administrative grievances against SCDC officials ranging from the lack of regular outdoor time and exercise equipment to dirty meal trays and the denial of properly prepared kosher meals. For this reason, the plaintiff's pleadings are largely deficient in alleging constitutional violations and require the court to screen not only the current claims but also the plaintiff's possible amended claims. The

1

screening standards are set out below followed by a discussion of the relevant counts.

Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss the entire complaint or any part of it, "if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). In addressing a claim brought under § 1983, the analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id*.

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted). The same standard used for Fed. R. Civ. P. 12(b)(6) motions is used for § 1915 dismissals, and this includes the newer language and meaning taken from *Twombly* and its "plausibility" determination. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). The Tenth Circuit has made clear, "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal

3

right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007).

**Motion to Amend**

The plaintiff has filed a five-page motion to amend complaint which alleges three additional claims for relief. ECF# 5. Though the plaintiff is entitled to amend his complaint once without leave of the court, the plaintiff's motion to amend is not a complete amended complaint. The plaintiff may not amend his complaint by simply submitting papers with additional claims and allegations as done here. To add claims or significant claims, the plaintiff must prepare and submit a complete amended complaint. *See* Fed. R. Civ. P. Rule 15. The amended complaint must be complete as it supersedes the original complaint. Therefore, it must include all parties, claims and factual allegations that the plaintiff intends to present, including those he wants to retain from the original complaint. The plaintiff may not simply refer to the original complaint. The plaintiff is hereby admonished that claims and allegations omitted from the amended complaint will be regarded as no longer before the court. To comply with the local court rule, the Amended Complaint must be submitted upon court-approved forms.

The plaintiff will be given thirty days to file a complete amended complaint upon proper forms that contains all of his claims and factual

allegations. This amended complaint also should address all of the pleading deficiencies addressed in this order omitting those claims which the plaintiff no longer wishes to pursue or which the court has otherwise dismissed in this order.

**Compensatory Damages Claim for Relief**

The plaintiff's complaints principally seek injunctive relief, but his original complaint included a claim for damages to compensate for "pain, sickness and mental anguish." ECF# 1, p. 19. Federal law prohibits prisoners from bringing federal actions "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Section 1997e(e) . . . provides in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.* In *Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002), the Tenth Circuit specifically held that the "Limitation on Recovery" set forth in § 1997e(e) applied to a First Amendment claim that prison officials denied the plaintiff a Kosher diet and to claims for actual or compensatory damages. *Id.* at 879, 881; *see also Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir.), *cert. denied*, 568 U.S. 934 (2012). The plaintiff's complaint fails to allege any facts to support a cognizable claim for damages. There are no allegations to indicate the defendants' actions caused the plaintiff to sustain a physical injury.

Thus, the plaintiff has no claim for damages absent the allegation of additional facts to support the same.

**Personal Participation of Defendants**

> The law is clear in this circuit:

> "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, there must be "an affirmative link … between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997) (quotation and brackets omitted).

*Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Thus, a general allegation that a grievance was denied, "by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Id.* (citations omitted). The allegation that the defendant failed to approve or denied a request may be sufficient. *Id.* at 1070.  Absent such allegations of personal participation, a defendant may be dismissed. The court will follow these rules in addressing the respective counts.

**Count One—SCDC's Failure to Respond to Grievances and Count Nine—Failure to Provide Immediate Attention to Grievances**

> For count one, the plaintiff alleges that he has filed different grievances which were "never answered, returned to plaintiff, or acknowledged in any way." ECF# 1, p. 4. The plaintiff alleges these grievance forms addressed his ignored requests for a kosher diet, his denied

6

request for exercise equipment to be included in the segregation recreation cages, and his denied request for access to basic hygiene items and to the general population commissary. For count nine, the plaintiff alleges that on April 10, 2017, he complained when his lunch came on a dirty food tray. The unit officer denied his request for a clean tray, refused his request to speak to a superior officer, and instructed him to file a grievance. The plaintiff filed an emergency grievance which was denied. Also for count nine, the plaintiff alleges a unit officer searched his cell and confiscated two magazines. The officer refused the plaintiff's request to return the magazines, so the plaintiff filed a grievance which was not acknowledged or answered. The plaintiff asserts the defendants' failure to respond to his grievances frustrates his effort to exhaust the required administrative process and violates his due process rights under the Fourteenth Amendment. The plaintiff essentially alleges SCDC officials refused to respond or responded inadequately to his grievances under the established grievance procedure.

The United States Constitution guarantees due process when a person is to be deprived of life, liberty, or property. *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (internal quotation marks and citation omitted). Thus, an inmate must have a liberty interest at stake to be entitled to procedural due process

protections. *See, id.* at 483-485. "Prison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'" *Murray v. Albany County Bd. of County Com'rs*, 211 F.3d 1278 (Table), 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *See Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (observing that inmates have no constitutionally-protected liberty interest in access to prison grievance procedure); *Anderson v. Colorado Dep't of Corrections*, 185 F.3d 873, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"), *cert. denied*, 528 U.S. 1165 (2000); *Boyd v. Ford County Detention Center*, 2017 WL 4786158, at *4 (D. Kan. Oct. 24, 2017) (state's voluntary provision of grievance process does not create a liberty interest in the process); *Johnson v. Richins*, 2010 WL 3121144, at *7 (D. Utah Aug. 9, 2010) ("Plaintiff's allegations of interference with the grievance process are insufficient to state a federal due process claim."), *aff'd*, 438 Fed. Appx. 647 (10th Cir. 2011). "The failure to respond to plaintiff's grievances did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life." *Murray*, 2000 WL 472842 at *2 (citing *See generally Sandin v. Conner*, 515 U.S. at 484, 487).

8

"'[W]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.'" *Boyd v. Werholtz*, 443 Fed. Appx. 331, 332 (10th Cir. 2011) (quoting *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)(per curiam)). The failure of SCDC officials to handle or decide the plaintiff's grievances, by itself, does not implicate his right of access to the courts. Nor does Plaintiff allege that any failure of the prison grievance system denied him access to the courts, and, indeed, he was able to file this action. Plaintiff has failed to state a valid 1983 claim for relief based on the handling of his prison system grievances. *See Fogle v. Infante*, 595 Fed. Appx. 807, 810 (10th Cir. 2014), *cert. dismissed*, 136 S. Ct. 58 (2015).

Most of the plaintiff's allegations under these counts do not implicate a constitutional right with the exception of personal property seized from his cell. The Tenth Circuit recognizes:

> A state must not "deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Copelin-Brown v. New Mexico State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005) (quoting *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991)). The Supreme Court has held that "an unauthorized intentional deprivation of property … does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Inmate grievance procedures can be an adequate post-deprivation remedy for the alleged destruction of property. *Id.* at 536 n.15, 104 S.Ct. 3194. A violation of due-process

procedures exists if the postdeprivation procedure is "unresponsive or inadequate." *Freeman v. Dep't of Corrs.*, 949 F.2d 360, 362 (10th Cir. 1991).

*Coburn v. Wilkinson*, 700 Fed. Appx. 834 (10th Cir. Jul. 19, 2017)(unpub.). The plaintiff alleges for count nine that his grievance for the confiscated property "was never answered or returned to plaintiff" and his magazines were never returned. ECF# 1, p. 18. While these allegations may state an actionable due process claim, the plaintiff's complaint is deficient in not alleging the named defendant who seized the property and who failed to answer the grievance. Therefore, this claim is subject to dismissal without additional allegations. As for count one and the dirty lunch tray allegation in count nine, absent additional allegations, these claims will be dismissed for failure to state a valid 1983 claim for relief based on the mere handling of his prison system grievances. Such a dismissal would be without prejudice to the plaintiff alleging and arguing these circumstances in the event that exhaustion of administrative remedies would become an issue. It is true that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010)

**Count Two—SCDC's Failure to Provide a Kosher Diet**

The plaintiff alleges the following in support of this claim. On February 20, 2016, the plaintiff requested a kosher diet and informed

10

Lieutenant Scribner with the SCDC that he practiced the Jewish religion. The plaintiff alleges that one week later he "was placed on the certified religious diet (CRD)." ECF# 1, p. 4. He also alleges:

> On or about 3-5-17, plaintiff was made aware that S.C.D.O.C. does not maintain a separate kosher kitchen for the preparation of CRD meals. S.C.D.O.C. uses the same pots, pans, and utensils to prepare both the CRD and regular trays. This is significant because kosher food is no longer kosher if it is prepared in containers or with utensils which have held non-kosher food.

ECF# 1, p. 7. The plaintiff alleges he submitted a request to the defendant Phelps on March 12, 2017, asking that his meal be prepared in a manner consistent with "keeping kosher" which is a central tenet of his religious belief. When these requests were not answered or acknowledged, the plaintiff alleges he filed grievances. The plaintiff next alleges that on April 15, 2017, he submitted a request and a separate grievance, "both complaining of" staff's failure to respond to his kosher diet requests. According to the plaintiff, this request and grievance also was never answered or acknowledged. Finally, the plaintiff alleges he submitted a request to Mary Fletcher requesting a kosher diet laying out the requirement for "keeping kosher," and this request was never approved.

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted). The First Amendment's free-exercise clause applies to the States through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310

U.S. 296, 303 (1940). The determination of what constitutes a "reasonable opportunity" is made "in reference to legitimate penological objectives." *Gallagher*, 587 F.3d at 1069. The Tenth Circuit has recognized "that an inmate's right to free exercise of religion includes the right to a diet that conforms with their religious beliefs." *Id.* at 1070 (citing *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)) (reversing dismissal of First Amendment claims stemming from a denial of Jewish inmates' request for a kosher diet). To allege a claim that his right to free exercise of religion was violated, the plaintiff inmate "must adequately allege that the defendants 'substantially burdened [his] sincerely held religious beliefs.'" *Gallagher*, 587 F.3d at 1069 (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). "Sincere religious beliefs must be accommodated . . . but non-religious beliefs need not be." *Vinning-El v. Evans*, 657 F.3d 591, 593 (7th Cir. 2011). "A prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet tastes, a belief that the preferred diet is less painful for animals, or a prisoner's desire to make a pest of himself and cause trouble for his captors." *Id.* A plaintiff must allege more than "isolated act[s] of negligence" in order to establish a substantial burden. *See Gallagher*, 587 F.3d at 1070. However, "[i]t is clearly established law that 'a prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition.'" *Oliver v. Harner*, 2016 WL 1117084, at

12

*10 (S.D. Ill. Mar. 22, 2016) (quoting *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009)).

As the allegations in the plaintiff's complaint closely parallel the testimony of Rabbi Engle and the court's findings regarding "Orthodox Judaism" set out in *Beerheide v. Suthers*, 286 F.3d 1179, 1183 (10th Cir. 2002), the plaintiff appears to have alleged a cognizable claim for violation of his First Amendment right to free exercise of religion by the defendants Phelps and Fletcher who have been specifically named in the complaint as having been asked to provide properly prepared Kosher food and as having personally failed to approve his requests. The allegations against defendant Cole are based on nothing more than supervisory capacity or the denial of grievances. It follows that the defendants Cole and Rucker are subject to being dismissed unless additional facts are alleged to show personal participation by each of these defendants. *See Hachmeister v. Kline*, 2013 WL 237815, at *3 (D. Kan. Jan. 22, 2013).

**Count Three—Actual "Through Glass" In-Person Visits**

The plaintiff here alleges that he requested and was denied these actual visits rather than "video visitations" and that he exhausted the administrative remedy process on his request. The plaintiff complains that these video visitations are nothing more than phone calls with video display conducted without the visitor coming to the actual jail. The plaintiff refers to his lack of disciplinary issues associated with visitation.

The plaintiff's complaint fails to allege what, if anything, any of the named defendants did to him, when it was done, how he was harmed, and what specific legal right of his was allegedly violated here. Assuming a Fourteenth Amendment claim, the Tenth Circuit has made it abundantly clear:

> "[t]o make a claim of denial of due process in violation of the Fourteenth Amendment, a plaintiff must show the deprivation of a protected liberty or property interest." *Schmitt v. Rice*, 421 Fed.Appx. 858, 861 (10th Cir. 2011) (unpublished) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "The Supreme Court has limited the scope of liberty interests to conditions involving an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Cleveland v. Martin*, 590 Fed. Appx. 726, 731–32 (10th Cir. 2014) (unpublished) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). "Since *Sandin*, we have consistently stated in unpublished opinions that inmates lack a liberty interest in visitation." *Id.* (citing *Marshall v. Morton*, 421 Fed.Appx. 832, 838 (10th Cir. 2011) (unpublished) (holding that "restrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause")).

*Rackley v. Blevins*, 596 Fed. Appx. 620, 624 (10th Cir. Dec. 19, 2014). This court has further noted:

> "[T]he Supreme Court has held that inmates have no right to unfettered visitation. Rather, prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner." *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998)(citing *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)(restrictive visitation procedures are within the broad discretion of prison officials); *Wirsching v. Col.*, 360 F.3d 1191, 1198 (10th Cir. 2004) ("the Constitution allows prison officials to impose reasonable restrictions upon visitation.") *Compare Johnson v. Miller*, 2009 WL 2591681 (W.D.Okla. 2009)(noting that

"Plaintiff has also not alleged that LCF imposed a complete ban on all of Plaintiff's visitors").

*Srader v. Richardson*, 2014 WL 1304934, at *5 (D. Kan. Mar. 31, 2014); *see*

*Wood v. Oklahoma Dept. of Corrections*, 2017 WL 377946, at *2 (W.D. Okla.

Jan. 26, 2017). As alleged, the plaintiff has not stated a claim for relief in

count three, as he has no fundamental right to visitation, let alone a right to

an in-person visitation through glass windows as opposed to a video

visitation. Absent additional allegations addressing all the deficiencies noted

above, this count is subject to dismissal.

**Count Four—Failure to Provide Adequate Exercise Opportunities while in segregation;**
**Count Seven—Cancellation of Recreation Due to Wet Floors; and**
**Count Eleven—Failure to Provide Adequate Exercise Opportunities while in general population**

The plaintiff alleges rights under the Eighth and Fourteenth

Amendment to receive adequate opportunities for exercise. On count four,

the plaintiff specifically alleges that on March 12, 2017, he made a written

request to Captain Rucker for exercise equipment to be added to the

segregation recreation cages. His request was denied, and his efforts to

exhaust administrative remedies were never answered or acknowledged. On

count seven, the plaintiff makes the related claim that staff frequently

cancelled outside recreation periods while he was in segregation due to wet

concrete floors. In his motion to amend, the plaintiff alleges in count eleven

that he was released from segregation on July 18, 2017, which moots his

claim for injunctive relief on counts four and seven. Consequently, these

claims are dismissed as moot due to the plaintiff's release from segregation. On count eleven, the plaintiff alleges inadequate opportunities for recreation while in general population due to facility lockdown caused by staffing issues and due to the limitation on the number of inmates allowed on the outdoor court.

"The Constitution does not mandate comfortable prisons, . . ., but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "Although we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment." *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343, 349–54 (1996). *See also Fogle v. Pierson*, 435 F.3d 1252, 1259–60 (10th Cir.)(ruling that allegedly "being denied all outdoor exercise for the three years he was

in administrative segregation" states an Eighth Amendment claim), *cert.*

*denied*, 549 U.S. 1059 (2006). "We recognize . . . that what constitutes

adequate exercise will depend on the circumstances of each case, including

the physical characteristics of the cell and jail and the average length of stay

of the inmates." *Housley v. Dodson*, 41 F.3d at 599. *See Perkins v. Kan.*

*Dept. of Corrections*, 165 F.3d 803, 810 n.8 (10th Cir. 1999)("What

constitutes adequate exercise will depend on the circumstances of each

case," and "penological considerations may, in certain circumstances, justify

restrictions."). As the Tenth Circuit has stated, "[although] one hour per

week . . . of . . . exercise and fresh air is still restrictive, we cannot say,

without more, that it fails to satisfy the demands of the Eighth Amendment."

*Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987).

   The plaintiff's allegations under the count eleven fail to allege

with specificity the denial of exercise opportunities that would approach a

constitutional violation. Instead, the plaintiff's allegations indicate that he

has exercised on the outdoor court and that the facility lockdowns have not

occurred with such frequency as to implicate Eighth Amendment concerns.

Without additional allegations, the plaintiff's count eleven is subject to

dismissal.

**Count Five—Access to Commissary for Purchase of Basic Hygiene Items and**
**Count Eight—Access to Hot Water within Segregation Cell**

Both of these counts allege conditions of confinement imposed while the plaintiff was in segregation. With his release to general population, the plaintiff's claims for injunctive relief in these counts are moot. The plaintiff has not alleged a cognizable claim for damages under either. These claims are dismissed as moot.

**Count Six—Denial of Basic Dental Hygiene and**
**Count Thirteen—Refusal to Fill Small Cavities**

For count six, the plaintiff alleges an Eighth Amendment violation by the denial of his request on April 21, 2017, to have his teeth cleaned and by the denial of dental floss while he has been at SCDC. For count thirteen, the plaintiff alleges he received a routine dental checkup in April of 2017 and the dentist found three small cavities in his teeth. The plaintiff first orally requested the dentist to fix the cavities, and the dentist said this would be done later. On May 30, 2017, the plaintiff submitted a medical request to the dentist asking for the cavities to be fixed, and his request was never returned to the plaintiff.

To state a § 1983 medical claim under the Eighth Amendment , a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test for deliberate indifference is both objective and subjective: a prisoner must establish that he was deprived of a medical need that is, objectively,

18

"sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and

that the defendant subjectively knew of and disregarded "an excessive risk

to [the prisoner's] health and safety," *id.* at 837. The Tenth Circuit recently

summarized the relevant law:

> "Prison officials violate the Eighth Amendment's prohibition against
> cruel and unusual punishment when they act deliberately and
> indifferently to serious medical needs of prisoners in their custody."
> *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). "Deliberate
> indifference has both an objective and subjective component." *Id.* To
> meet the objective component, "[t]he medical need must be
> sufficiently serious." *Id.* A medical need is sufficiently serious "if the
> condition 'has been diagnosed by a physician as mandating treatment
> or is so obvious that even a lay person would easily recognize the
> necessity for a doctor's attention.'" *Al–Turki v. Robinson*, 762 F.3d
> 1188, 1192–93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241
> F.3d 1272, 1276 (10th Cir. 2001)). To satisfy the subjective
> component, the plaintiff must show that the defendant knew that the
> plaintiff "faced a substantial risk of harm and disregarded that risk, 'by
> failing to take reasonable measures to abate it.'" *Hunt*, 199 F.3d at
> 1224 (quoting *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970). The
> substantial-harm requirement "may be satisfied by lifelong handicap,
> permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d
> 946, 950 (10th Cir. 2001).

*The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1112

(10th Cir. 2016), *cert. denied*, 137 S.Ct. 2298 (2017). The level required to

make out a claim for deliberate indifference is "more blameworthy than

negligence," requiring "more than ordinary lack of due care for the prisoner's

interests or safety." *Farmer*, 511 U.S. at 835. "Moreover, a delay in medical

care 'only constitutes an Eighth Amendment violation where the plaintiff can

show [that] the delay resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d

745, 751 (10th Cir. 2005) (quoting *Oxendine*, 241 F.3d at 1276). As already

noted, this substantial harm would include, "lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (internal quotation marks and citation omitted).

The plaintiff's allegations that his requests for dental floss, for his teeth to be cleaned, and for his minor cavities to be filled fail the objective component of a sufficiently serious medical need. *See Sayed v. Broman*, 638 Fed. Appx. 698 (10th Cir.) (allegations of ongoing dental issues and a request to have teeth cleaned fail to state a plausible Eighth Amendment claim), *cert. denied*, 136 S. Ct. 1670 (2016). The plaintiff's conclusory allegations on needing cavities filled immediately and for a teeth cleaning are insufficient. Such "allegations regarding the need for, and the denial of, treatment do not provide sufficient information to conclude the deprivation may have been sufficiently serious." *Sayed*, 638 Fed. Appx. at *700. The complaint lacks the allegations, which if proven, would support a finding that his need for dental cleaning by a dental professional was a sufficiently serious medical need. Additionally, the allegations here provide insufficient facts to meet the deliberate indifference requirement for Eighth Amendment claims. The plaintiff's complaint is devoid of any facts showing the delay in filling the minor cavities will result in substantial harm. Nor has the plaintiff alleged that any of the named defendants personally participated in any decision to deny care here. Without additional allegations, these claims are subject to dismissal.

**Count Ten—Failure to Clean Adequately the Food Trays**

The plaintiff alleges that his food tray on April 10, 2017, was encrusted with food from the prior day and that he submitted a written request to Fletcher for the trays to be properly cleaned. His food tray on April 15, 2017 was again dirty, so he filed a grievance. On April 17, 2017, the plaintiff became ill. He alleges being told it was due to food poisoning, and his grievance based on this event was never answered or returned. The plaintiff concludes with a general allegation that the food trays remain unsanitary with encrusted food on them.

The Tenth Circuit has recognized that a State must provide an inmate with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980) (citations omitted), *cert. denied*, 450 U.S. 1041 (1981). This must be framed within the context of an Eighth Amendment claim:

> An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency. The objective component requires conditions sufficiently serious so as to "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Alternatively, a condition must be sufficiently serious so as constitute a substantial risk of serious harm. *Helling v. McKinney*, 509 U.S. 25, 33–35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety. *Wilson v.*

*Seiter*, 501 U.S. 294, 297, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

*Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). First, the presence every day of completely sanitized foods is not what this court would regard as a minimal civilized necessity of life. Nor is the occasional dirty food tray a condition sufficiently serious as to be a substantial risk of serious harm. Moreover, the plaintiff's complaints of occasional dirty food trays suggest negligence rather than a "wanton and obdurate disregard for inmate health and safety." *Shannon*, 257 F.3d at 1168. As they stand, the plaintiff's allegations simply do not rise to the level of a constitutional violation.

**Count Twelve:  Charging Phone Fees in Excess of Government Caps**

The plaintiff here alleges that the SCDC charges rates for collect and prepaid calls that exceed the rate cap "set by the government." ECF# 5, p. 3. The plaintiff alleges this practice violates his Fourteenth Amendment rights. The plaintiff's fails to allege how the SCDC's charges deprive him of any rights under the Fourteenth Amendment. There is nothing alleged here to show the denial of due process or equal protection rights. The plaintiff's complaint about the fees and costs "do not state a cause of action." *Palmer v. Baldwin*, 2017 WL 3026210, at *3 (S.D. Ill. Jul. 17, 2017) (citing *Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir.)(excessive telephone charges did not implicate prisoner's First Amendment rights), *cert. denied*, 534 U.S. 1062 (2001)); *see Harrell v. Solano County Jail*, 2015 WL 5813700, at *4 (E.D.

Cal. Sept. 30, 2015) ("[T]here is no authority for the proposition that prisoners are entitled to seek a specific rate for their telephone calls." (citations omitted)). Absent additional allegations, this count is subject to dismissal.

IT IS THEREFORE ORDERED that the plaintiff is granted 30 days in which to file a complete Amended Complaint upon court-approved forms that cures all the pleading deficiencies discussed above, that omits all of the claims dismissed above, and that includes all of the plaintiff's remaining claims from the original complaint and the motion to amend which he still intends to pursue;

IT IS FURTHER ORDERED that the plaintiff shall file within this same 30-day period a response that shows cause why his remaining claims alleged in his complete Amended Complaint should not be dismissed for the reasons stated in this memorandum and order.

Dated this  1st day of December, 2017, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge